UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

CHARLES B.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

6:22-cv-00071-JR

OPINION AND ORDER

Russo, Magistrate Judge:

Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final decision denying plaintiff's application for disability insurance benefits. For the reasons stated below, the Commissioner's decision is affirmed.

Plaintiff asserts disability beginning June 1, 2018, due to a crushed and rebuilt left heel and wedge fracture in the lumbar portion of his spine. Tr. 249, 241. After a hearing held on January

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Order uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

11, 2021, an Administrative Law Judge (ALJ) determined plaintiff was not disabled. Tr. 31, 13-25.  Plaintiff contends the ALJ erred by: (1) rejecting plaintiff's symptom testimony; and (2) rejecting medical opinions.

A.    Subjective Symptom Testimony

On June 1, 2018, plaintiff fell 25 feet from a ladder after being electrocuted resulting in a left calcaneus fracture and lumbar spine fracture.  Tr. 416, 512.  Plaintiff did not hit his head or lose consciousness as a result of the fall.  Tr. 350.  On June 14, 2018, plaintiff underwent open reduction and internal fixation surgery to address the heel injury.  Tr. 405-06.  By June 7, 2019, plaintiff reported no longer having back pain and that it "pretty much subsided to a fairly low level and he is getting around nicely although his foot is obviously quite limited, and he continues to use a cane."  Tr. 555.

The ALJ determined that:

from the Alleged Onset Date of June 1, 2018, through October 31, 2019, with the following limitations. The claimant could stand/walk two hours and sit six hours during an eight-hour workday. The claimant could lift/carry 10 pounds occasionally and less than 10 pounds frequently. He could frequently balance and climb ramps and stairs. He could occasionally stoop, kneel, crouch, and crawl. The claimant could not climb ladders, ropes, or scaffolds or work at unprotected heights. Beginning November 1, 2019, and through the date of this decision, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations. He can sit six hours and stand/walk four hours during an eight-hour workday. He can lift/carry 10 pounds frequently and 20 pounds occasionally. The claimant can frequently balance and climb ramps/stairs. He can occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, or scaffolds.

Tr. 19.  Accordingly, the ALJ concluded plaintiff is capable of performing his past relevant work as a financial advisor.  Tr. 24.

Plaintiff testified he cannot work as a financial advisor because:

I can't remember my customers' names. I couldn't remember them back in 2008, when I quit. I can't remember when my kids talk to me about stuff that we've

> done in our lifetime, I have no idea what they're talking about. I can't go back. I mean, would you give your money -- I mean, we're talking, I mean, all your money. Would you want me to deal with your money, and take care of you and your family and your kids, when I don't even know who you are at the mall? I can't do that. And that's why I quit. Because I couldn't stand it.
>
> And my customers were obviously starting to notice that something was going on. And I couldn't hide it anymore. The last two years of my business, I didn't even come -- I'd come in at 8:00 in the morning and leave between noon and 1:00 and not come back, and never work on Fridays. Because I had to stay away from there. And I realized I was doing such a disservice to my customers. And fortunately, for them, my son decided he wanted to get in the business. And I thought, thank God, I can get out. I told everybody I was retiring. I lied to everybody I knew, saying I was retiring. But I was quitting. I just didn't -- I gave it all to my son and ran. I couldn't -- I can't do it again. I don't know -- I can't remember things, anymore.

Tr. 53-54.

The ALJ noted, with respect to plaintiff's capacity for memory, that during two consultative exams plaintiff was:

> oriented in all spheres. At the first consultative evaluation, he was able to repeat seven digits forward and five backwards. He was able to recall all words without cues or prompts [TR. 700]. Similarly, at the second consultative exam, he was noted to have adequate long-term memory, and was able to recall three out of three words after five minutes [Tr. 812]. He is able to manage several rental properties, including obtain rental tenants, and perform small repairs on such properties. He is able to hire out for larger ones. He manages his own finances, including the receipt of residual insurance payments [Tr. 698]. He is able to drive, including a motorcycle. This latter activity reflects sufficient ability to understand, remember, and apply applicable state traffic laws, and integrate them into independent situational awareness and projective judgment every few seconds. Overall, the record supports no more than mild limitations in this area.

Tr. 17.

With respect to concentration and persistence, the ALJ noted:

> The record documents some minimal symptoms of depression such as mild fluctuations in mood that could cause some minimal limitations in this domain. [Tr. 812]. He was able to concentrate and participate fully at both consultative psychological evaluations. He was oriented in all spheres. At the first consultative evaluation, he was able to repeat seven digits forward and five backwards. He was able to recall all words without cues or prompts [Tr. 700]. Similarly, at the second consultative exam, he was noted to have adequate long-term memory, and was able

>to recall three out of three words after five minutes [Tr. 812]. He is able to manage several rental properties, including obtain rental tenants, and perform small repairs on such properties. He is able to hire out for larger ones. He manages his own finances, including the receipt of residual insurance payments [Tr. 698]. He is able to drive, including a motorcycle. This latter activity, driving, reflects requires substantial attention and concentration, in order to remember, understand and carry out complex functions, and to integrate such complex functions into independent situational awareness and projective judgment every few seconds. It is certainly not a simple and routine set of functions. Overall, the record supports no more than mild limitations in this area.

Tr. 17-18.

As the ALJ noted, the medical record does not support plaintiff's asserted limitations. Although lack of medical evidence cannot form the sole basis for discounting symptom testimony, it is a factor that the ALJ can consider in his credibility analysis. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). In addition, the ALJ noted daily activities such as managing rental properties that demonstrates plaintiff's memory and concentration issues are not as severe as he asserts. The ALJ may consider whether plaintiff engages in daily activities inconsistent with the alleged symptoms in discrediting testimony. Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007). Moreover, even where those activities suggest some difficulty functioning, there may be grounds for discrediting the claimant's testimony to the extent they contradict claims of a debilitating impairment. See Turner v. Commissioner, 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine v. Commissioner, 574 F.3d 685, 693 (9th Cir. 2009). The ALJ did not err in discrediting plaintiff's asserted memory issues preventing a return to his previous employment.

B.     Medical Opinion

Plaintiff asserts the ALJ erred with respect to the opinions of Dr. David Archambault and Dr. Scott Alvord by failing to consider the opinions in their broader context of the diagnosis and observations of impairment and the consistency between the two opinions.

    1.    <u>Dr. David Archambault, Ph.D.</u>

Dr. Archambault diagnosed plaintiff with Major depressive disorder, recurrent, moderate.

Tr. 701. After a single exam,[2] Dr. Archambault opined:

> The claimant would not have difficulty performing simple and repetitive tasks. The claimant would have difficulty performing detailed and complex tasks.
> The claimant would not have difficulty accepting instructions from a supervisor.
> The claimant would not have difficulty interacting with coworkers and the public.
> The claimant would not have difficulty performing activities on a consistent basis without special or additional instructions.
> The claimant would not have difficulty maintaining regular attendance and completing a normal workday/workweek without interruption from a psychiatric condition.
> The claimant would have some difficulty dealing with the usual stress encountered in the workplace. It is believed that the symptoms associated with his depression leave him with minimal
> internal resources for the appropriate management of stress and or resolution of conflict in a work or social setting.

Tr. 701-02.

The ALJ stated:

> Dr. Archambault opined that the claimant would have some difficulty dealing with the usual stress encountered in the workplace and performing detailed and complex tasks. [Tr. 702]. This portion of Dr. Archambault's opinion is not persuasive because it is not consistent with Dr. Archambault's own findings and observations of the claimant, including the claimant's mental status examination results. It is also inconsistent with the claimant's reported activities, including managing several rental properties, driving, and traveling. Finally, Dr. Archambault supported this portion of his opinion by explaining that the claimant's depression leaves the claimant with minimal internal resources for the appropriately management of stress and/or resolution of conflict in a work or social setting. [Tr. 702]. Yet, the record documents minimal mental health treatment without any evidence of exacerbation, difficulty functioning, or worsening symptoms. For all these reasons, this portion of Dr. Archambault's opinion is not persuasive.

Tr. 16. In addition, the ALJ noted the

> state agency psychological consultants opined that the claimant's mental impairment has caused no more than "mild" limitations and is therefore "non-

---

[2] Dr. Archambault stressed that "[i]t is important to note the present evaluation is limited in scope and based upon a single time, limited session." Tr. 701

Page 5 – OPINION AND ORDER

severe." [Tr. 79-80; 100; 812-13]. The state agency psychological consultants provided sufficient support for this opinion. For example, they explained that the claimant's mental status has been within normal limits and that he has strong ability to perform a variety of daily activities, including his continued ability to profit from rental properties. These opinions are also consistent with the overall record, documenting the claimant's normal mental status, daily activities, and lack of mental health treatment. In light of this support and consistency, the undersigned finds these opinions to be persuasive.

Tr. 17.

Under the current regulations, the ALJ shall consider supportability, consistency, the relationship with the claimant, length of treatment relationship, frequency of examinations, examination relationship (i.e., in person versus record), specialization, and other factors such as an understanding of disability policies and requirements in assessing medical opinion. 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. 20 C.F.R. § 1404.1520c(b)(2).

The new regulations still require ALJs to articulate their reasoning, specifically addressing how they considered the consistency and supportability factors. Titus L.S. v. Saul, 2021 WL 275927 (C.D. Cal. Jan. 26, 2021). An ALJ must do so in sufficient detail to allow a reviewing court to determine whether that reasoning is free of legal error and supported by substantial evidence. See Zhu v. Comm'r of Soc. Sec., 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (applying the substantial evidence standard under the new 2017 regulations).

As noted above, the mental status tests revealed only minor and mild limitations. The ALJ explained how the examinations and plaintiff's activities revealed limitations inconsistent with Dr. Archambault's opinion. The ALJ appropriately considered the opinion and did not err in rejecting Dr. Archambault's conclusions. See Woods v. Kijakazi, 32 F.4th 785, 792–93 (9th Cir. 2022) (ALJ may discount opinion that is inconsistent with the overall treating notes and mental status exams in the record).

### 2.    Scott Alvord, PSY.D.

Dr. Alvord diagnosed mood disorder and possible neurocognitive disorder related to "possible TBI/electrocution.").[3]  Tr. 813.

After a single exam, Dr. Alvord opined:

> 1. The claimant would not have difficulty performing simple and repetitive tasks.
> 2. The claimant would have mild to moderate difficulty performing detailed and complex tasks.
> 3. The claimant would have mild to moderate difficulty accepting instructions from supervisors.
> 4. The claimant would have mild to moderate difficulty interacting with co-workers and the public.
> 5. The claimant would have mild to moderate difficulty performing work activities on a consistent basis without special or additional instructions/accommodations.
> 6. The claimant would have mild to moderate difficulty maintaining regular attendance in the workplace.
> 7. The claimant would have mild to moderate difficulty completing a normal workday/workweek without interruptions from a psychiatric condition.
> 8. The claimant would have mild to moderate difficulty dealing with usual stress encountered in the workplace.

Tr. 814.

The ALJ noted:

> Dr. Alvord opined that the claimant would have mild-to moderate difficulties engaging in most areas of mental functioning. [Tr. 814]. This is inconsistent with the claimant's presentation during the evaluation and mental status examination. Tr. 812-13]. This is also inconsistent with the overall record documenting that the claimant has been able to perform a variety of daily activities including driving, traveling, and managing several rental properties. Further, this is inconsistent with the fact that the evidence reveals minimal, if any, mental health treatment. In light of these significant inconsistencies, the undersigned does not find the opinion that the claimant has "moderate" limitations to be persuasive.

Tr. 16-17.

---

[3] Dr. Alvord did state, "[g]enerally mental status exam does not highlight serious neuropsychological limitations." Tr. 813.

Again, the ALJ appropriately articulated her reasoning, specifically addressing how she considered the consistency and supportability of Dr. Alvord's opinion. Accordingly, the ALJ did not err with respect the medical opinions in the record.

## CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is affirmed. The Clerk is directed to enter a judgment accordingly.

DATED this 30th day of January, 2023.

                                      /s/ Jolie A. Russo
                                      JOLIE A. RUSSO
                                      United States Magistrate Judge